UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
SHAKIRA DAWSON et al., :
:
Plaintiffs, :
: 18-CV-1044 (JMF)
-v- :
: OPINION AND ORDER
THE CITY OF MOUNT VERNON et al., :
:
Defendants. :
:
-----------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

This case arises from an encounter between Plaintiffs Shakira Dawson and Robert Johnson and officers of the Mount Vernon Police Department ("MVPD"). On February 7, 2017, Plaintiffs drove off after being approached by the police and initiated a high-speed chase through Mount Vernon and the Bronx. *See* ECF No. 100 ("Dawson SAC"), ¶¶ 11-23; ECF No. 101 ("Johnson FAC"), ¶¶ 11-22. During the pursuit, several MVPD officers, Defendants here, fired their guns at Plaintiffs, eventually hitting Dawson. Dawson SAC ¶ 24; Johnson FAC ¶ 23. Plaintiffs were arrested and charged with various crimes, but Dawson was later acquitted on all charges and the charges against Johnson were dismissed. Dawson SAC ¶¶ 41-46; Johnson FAC ¶¶ 29-38. Thereafter, Dawson and Johnson filed separate lawsuits, since consolidated, against the City of Mount Vernon ("Mount Vernon"), the MVPD, and a slew of MVPD officers.[1] They bring claims pursuant to 42 U.S.C. § 1983 for false arrest, excessive force, failure to intervene, and malicious prosecution; a claim against Mount Vernon and the MVPD for municipal liability;

---

[1] The individual Defendants are Lieutenant Joseph Hunce, Detective John Gamble, Detective Anthony Burnett, Officer Kareem Lloyd, Officer Billy Exarhakos, Officer Donavan S. Yoe, Officer Ronald E. Simpson, Officer Dante Chisolm, and Detective Osvaldo Medina.

and state claims for assault, battery, false arrest, intentional infliction of emotional distress, and negligent hiring. Dawson SAC ¶¶ 48-110; Johnson FAC ¶¶ 40-101. Dawson also brings a Section 1983 claim for denial of the right to a fair trial. Dawson SAC ¶¶ 73-77. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for partial dismissal of Plaintiffs' claims — namely, for dismissal of all claims except Dawson's claims for excessive force and battery against Burnett, Lloyd, Gamble, and Exarhakos.[2] ECF No. 115. For the reasons that follow, their motion is granted in part and denied in part.

For starters, Defendants' motion is easily granted in several respects. First, all claims against the MVPD must be and are dismissed as it is not a suable entity. *See, e.g.*, *Monroe v. Gould*, 372 F. Supp. 3d 197, 205 n.5 (S.D.N.Y. 2019). Second, Johnson's stand-alone claim under Section 1983 for "deprivation of civil rights" must be and is dismissed because "Section 1983 itself creates no substantive rights." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see Abujayyab v. City of New York*, No. 15-CV-10080 (NRB), 2018 WL 3978122, at *4 (S.D.N.Y. Aug. 20, 2018). Third, in her motion papers, Dawson explicitly "does not address Defendants['] arguments with respect to common law tort claims of assault, intentional infliction of emotional distress, and negligent retention and hiring." ECF No. 121 ("Dawson Opp'n"), at 3. Those claims have therefore been abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *Simon v. City of New York*, No. 14-CV-8391 (JMF), 2015 WL 2069436, at *2 (S.D.N.Y. May 4, 2015).

Johnson did not abandon his state-law claims, but most of them do not fare much better. Johnson alleges that "[e]ach and all acts of the defendants alleged . . . were done by said

---

[2]  Exarhakos is spelled "Ekarhakos" in Plaintiffs' pleadings, but the Court adopts the "Exarhakos" spelling used by Defendants in their motion papers.

defendants while acting in furtherance of their employment by defendant City of Mount Vernon." Johnson FAC ¶ 9; *see* ECF No. 119 ("Johnson Opp'n"), at 24. This allegation is fatal to his claim of negligent hiring, training, supervision, and retention under New York law, which requires a showing that the relevant employees were acting "outside the scope of [their] employment." *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013). Meanwhile, Johnson's claim of intentional infliction of emotional distress ("IIED") must be and is also dismissed. An IIED claim may be invoked "only as a last resort" and cannot be brought "where the challenged conduct falls well within the ambit of other traditional tort liability." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal quotation marks omitted). Here, Johnson's IIED claim overlaps fully with his assault claim and therefore must be dismissed as to all Defendants.

Finally, Plaintiffs' *Monell* claims against Mount Vernon are also easily dismissed. It is true that Section 1983 plaintiffs cannot be expected to know the details of a municipality's internal policies, investigations, or training programs prior to discovery. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). But "this does not relieve them of their obligation . . . to plead a facially plausible claim" of liability against a municipal defendant. *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012). Here, Plaintiffs fail to support their conclusory allegations of a failure to train, a failure to investigate, and a pattern of constitutional violations with specific facts. *See* Dawson SAC ¶¶ 78-84; Johnson FAC ¶¶ 68-74. Their Section 1983 claims against Mount Vernon must therefore be dismissed. *See, e.g.*, *Adams-Flores v. City of New York*, No. 18-CV-12150 (JMF), 2020 WL 996421, at *7 (S.D.N.Y. Mar. 2, 2020); *Antic v. City of New York*, 273 F. Supp. 3d 445, 459 (S.D.N.Y. 2017).

That leaves Plaintiffs' claims for false arrest, malicious prosecution, excessive force, and failure to intervene, as well as Dawson's claim for denial of the right to a fair trial. The Court will address each of these claims in turn.

## A. False Arrest

First, Plaintiffs' false arrest claims fail as a matter of law because there was probable cause for their arrests. It is well established that the existence of probable cause to arrest — "even for a crime other than the one identified by the arresting officer" — is a complete defense to a claim of false arrest under both federal and New York law. *See Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Here, there was probable cause to arrest for at least two different crimes: first, violation of New York Vehicle & Traffic Law Section 375(12-a)(b), which prohibits the operation of a motor vehicle with tinted windows on any public highway, road, or street; and second, obstruction of governmental administration under New York Penal Law § 195.05, which prohibits interfering with the duties of a government employee or officer in certain ways. As to the former, Plaintiffs themselves allege that officers observed them while they were sitting in "a black Chevrolet Malibu with [] tinted windows . . . [that] precluded anyone outside the vehicle from seeing the occupants or any activity inside [the] vehicle" and that the car's engine was running. Johnson FAC ¶¶ 11, 13; Dawson SAC ¶ 11, 14; *Scott v. City of New York*, No. 19-CV-6289 (JPO), 2022 WL 846929, at *3 (S.D.N.Y. Mar. 22, 2022).[3] Johnson's argument that he was not the driver of the car is beside the point. At the time of arrest, Defendants had probable cause to believe that either Dawson or

---

[3]   Johnson's argument that "the vehicle was not in operation at the time the officers approached the black Malibu," Johnson Opp'n 7, borders on frivolous. First, he himself alleges that the car's engine was "running." Johnson FAC ¶ 11. Second, he and Dawson were arrested only after they led the police on a high-speed chase.

4

Johnson was operating the vehicle because Plaintiffs, by their own admission, were sitting in a vehicle that was so "heavily tinted" that no one outside could "see[] the occupants or any activity inside" the vehicle. Dawson SAC ¶ 14; Johnson FAC ¶ 13; *see Higginbotham v. Sylvester*, 218 F. Supp. 3d 238, 241 (S.D.N.Y. 2016) ("When determining whether probably cause existed to support an arrest, we consider those facts available to the officer at the time of arrest and immediately before it." (cleaned up)).[4]  As to obstruction of governmental administration, Plaintiffs expressly allege that they refused to open the window after being ordered to do so by police and then drove away "in a state of confusion, panic and distress." *See* Dawson SAC ¶¶ 21-22; Johnson FAC ¶ 20.  In other words, Plaintiffs "admit[] that [they] intentionally did not obey the orders of the officers." *McKenzie v. City of New York*, No. 17-CV-4899 (PAE), 2019 WL 3288267, at *7 (S.D.N.Y. July 22, 2019).  Accordingly, Plaintiffs' false arrest claims must be and are dismissed.

**B. Malicious Prosecution and Denial of the Right to a Fair Trial**

Next, Plaintiffs' malicious prosecution claims and Dawson's claim for denial of the right to a fair trial can be addressed together because they all suffer from the same fatal deficiency: the failure to allege "which defendant was involved in the alleged unlawful conduct." *Adamou v. Cnty. of Spotsylvania*, No. 12-CV-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016); *accord Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018).  Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must "give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003).  It is well settled that "lumping all the defendants together in each claim

---

[4]  Moreover, Plaintiffs themselves explicitly allege that they each operated the car.  *See* Dawson SAC ¶¶ 21-22 (alleging that Dawson was operating the car until Johnson "commandeered" it and drove away); Johnson FAC ¶¶ 20-21 (same).

5

and providing no factual basis to distinguish their conduct[] . . . fail[s] to satisfy this minimum standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). Here, Plaintiffs engage in just such impermissible group pleading by alleging merely that "Defendants" fabricated evidence and provided false and misleading information to the district attorney. Dawson SAC ¶ 41-44; Johnson FAC ¶ 33-36. Not once in the paragraphs Plaintiffs devote to their malicious prosecution claims and Dawson devotes to her fair trial claim do they specify which of the nine named Defendants were involved in the unlawful conduct. *See* Dawson SAC ¶¶ 41-47, 60-77; Johnson FAC ¶¶ 33-39, 57-67. Nor do Plaintiffs allege that "all the defendants were . . . actively involved in the complained-of conduct." *Serrata v. Givens*, No. 18-CV-2016 (ARR), 2019 WL 1597297, at *5 (E.D.N.Y. Apr. 15, 2019); *accord Breton v. City of New York*, No. 17-CV-9247 (JGK), 404 F. Supp. 3d 799, 815 (S.D.N.Y. 2019). Accordingly, Defendants' motion must be and is granted as to Plaintiffs' malicious prosecution claims and Dawson's fair trial claim. *See Myers*, 326 F.R.D. at 60; *Adamou*, 2016 WL 1064608, at *11.[5]

## C. Excessive Force, Assault, and Battery

Next, Plaintiffs' excessive force claims are dismissed as to Chisolm, Medina, Johnson, Centenno, Sanchez, Burts, Rhodes, and Hunce. A police officer's use of force is "excessive" in

---

[5] In the alternative, Johnson's malicious prosecution claim is subject to dismissal because Defendants had continuing probable cause as to all of crimes for which he was arrested. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("[C]ontinuing probable cause is a complete defense to a constitutional claim of malicious prosecution."). As both Plaintiffs allege, Johnson "commandeered the vehicle from [] Dawson" and initiated a high-speed police chase into the Bronx. Johnson FAC ¶ 21; Dawson SAC ¶ 22. Defendants therefore had probable cause to prosecute Johnson for reckless endangerment, fleeing a police officer, obstruction of governmental administration, and resisting arrest. Based on these facts, Defendants also had continuing probable cause to charge Dawson with fleeing a police officer, obstruction of governmental administration, and resisting arrest. But it is not clear on the current record whether Defendants had continuing probable cause to charge Dawson with reckless endangerment, reckless driving, and aggravated unlicensed operation of a motor vehicle.

violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances known to the officer. *See Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). To determine whether the amount of force applied to the plaintiff was unreasonable, courts consider: "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (cleaned up). It is well established that "not every push or shove" or "the routine rough and tumble of an arrest" is excessive. *Medley v. Garland*, 71 F.4th 35, 47-48 (2d Cir. 2023). Indeed, "[e]xcessive force claims require 'serious or harmful,' not 'de minimis,' use of force." *Gutierrez v. City of New York*, No. 13-CV-3502 (JGK), 2015 WL 5559498, at *7 (S.D.N.Y. Sept. 21, 2015).

Dawson argues that Plaintiffs' excessive force claims should not be dismissed as to Hunce, Rhodes, Burt, and Medina. Dawson Opp'n 13. But consistent with other cases in this District, Plaintiffs' allegation that Hunce, Rhodes, and Burt "smash[ed] the car window," *id.*, is not enough to state a claim of excessive force against them, *see Gutierrez*, 2015 WL 5559498, at *7. Neither is Plaintiffs' allegation that Medina "used his 'vehicle to strike the Malibu.'" Dawson Opp'n 13. By the time that Medina's vehicle struck the Malibu, Plaintiffs had fled the police and led them on a chase through Mount Vernon and the Bronx. The somewhat intensified "rough and tumble" was reasonable under the circumstances. Moreover, Plaintiffs do not allege that they suffered any injuries from either the breaking of the window or the car crash, as required to state a claim for the use of excessive force. *See, e.g.*, *Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *6 (S.D.N.Y. Mar. 7, 2016) ("[A] plaintiff must have sustained some injury to maintain a claim of excessive force."). Finally, neither Complaint

contains any allegation that Chisolm, Johnson, Centenno, or Sanchez used force at all — let alone excessive force. Plaintiffs' excessive force claims must be and are therefore dismissed as to Chisolm, Medina, Johnson, Centenno, Sanchez, Burts, Rhodes, and Hunce.

Johnson's excessive force claim as to Burnett, Lloyd, Gamble, and Ekarhakos must also be dismissed for lack of injury. Although "the absence of significant injury . . . is not dispositive under a Fourth Amendment analysis," *Jones v. Treubig*, 963 F.3d 214, 239 (2d Cir. 2020), "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered,'" *Austin v. Pappas*, No. 04-CV-7263 (KMK), 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)). Here, Johnson alleges that Defendants' actions led to "bodily injuries including, but not limited to bruising to the torso, arms and head," but does not claim that these injuries stemmed from the shooting. Johnson FAC ¶ 51. And while Johnson claims that he "suffered severe emotional distress . . . together with embarrassment, humiliation, shock, [and] fright," Johnson FAC ¶ 96, "[e]motional pain and suffering cannot form the basis of an excessive force claim," *Davis v. United States*, No. 03-CV-1800 (NRB), 2004 WL 324880, at *10 n.6 (S.D.N.Y. Feb. 19, 2004). Defendants' motion is therefore granted as to Johnson's excessive force claim, even as to Burnett, Lloyd, Gamble, and Exarhakos. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013) (dismissing excessive force claim against certain defendants because "none of these [d]efendants proximately caused any of [the plaintiff]'s injuries").

Finally, it is well-established that "[t]he elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'" *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021); *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *13 (S.D.N.Y. Apr. 11, 2014) ("To succeed on an assault or battery claim in the law

enforcement context, a plaintiff must demonstrate that defendants' conduct 'was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties.'" (quoting *Torres-Cuesta v. Berberich*, 511 F. App'x 89, 91 (2d Cir. 2013))). Defendants' motion is therefore granted as to Dawson's state-law claim of battery against Chisolm, Medina, Johnson, Centenno, Sanchez, Burts, Rhodes, and Hunce, and Johnson's claims of assault and battery against all individual Defendants.

### D.  Failure to Intervene

That leaves Plaintiffs' claims for failure to intervene. For starters, Johnson's claim for failure to intervene must be and is dismissed as to all individual Defendants because "there can be no failure to intervene claim without a primary constitutional violation." *Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021). Dawson's failure to intervene claim must also be dismissed as to Hunce, as Dawson acknowledges that Hunce in fact "sought to stop the officers shooting at the car by screaming at them to stop, asking them what they were shooting at, and waiving them off." Dawson SAC ¶ 27. Dawson does not plead any additional allegations regarding Hunce's actions (or lack thereof) during the shooting.

Hunce aside, because Dawson "adequately plead[s] underlying constitutional violations and the presence of multiple NYPD officers during [the shooting] [she] may move forward to discovery . . . . to determine which [of the other Defendants] participated directly in the alleged constitutional violations and which officers were present and failed to intervene." *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 725 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Buari*, 530 F. Supp. 3d at 392-93. Contrary to Defendants' argument that Dawson fails to "plead specifically that [Defendants] had a realistic opportunity to stop any officer from allegedly firing," Defs. Mem. 14, the "reasonable inference[]" to be drawn from her allegation

9

regarding Hunce's efforts to stop the shooting is that other Defendants did, in fact, have a realistic opportunity to intervene, *Oakley v. Dolan*, 980 F.3d 279, 282 (2d Cir. 2020). And Dawson further alleges that Defendants who did not fire were "present and partnered with the officers that discharged their weapons," and specify which officer was partnered with whom. Dawson SAC ¶ 25. To be sure, it may be difficult to establish that these officers could have done anything to prevent the shooting, especially if it "transpired very quickly." *Hickey v. City of New York*, No. 01-CV-6506 (GEL), 2004 WL 2724079, at *13 (S.D.N.Y. Nov. 29, 2004) (Lynch, J.); *see also Bah v. City of New York*, 319 F. Supp. 3d 698, 714 (S.D.N.Y. 2018); *Alvarez v. City of New York*, No. 11-CV-5464 (AT), 2015 WL 1499161, at *9 (S.D.N.Y. Mar. 30, 2015). But ultimately, whether they "could have or should have intervened is an issue of fact for the jury to resolve." *Hickey*, 2004 WL 2724079, at *13; *see Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014). Defendants' motion is therefore denied as to Dawson's claim of failure to intervene against all individual Defendants other than Hunce.[6] The Court notes, however, that "at the time of trial, after having had the benefit of discovery, [Plaintiff] will have to specifically identify which, if any, of the [] Defendants [she] seeks to hold liable under a failure to intervene theory." *Buari*, 530 F. Supp. 3d at 393.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to all claims they seek to dismiss except for Dawson's failure to intervene claim as to all individual Defendants other than Hunce. Accordingly, what remains are that claim and the claims that

---

[6] Although "the failure to intervene theory of liability is inapplicable" to those Defendants who were direct participants in the alleged use of excessive force, Dawson may hold those officers "liable for one or the other." *Buchy v. City of White Plains*, No. 14-CV-1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015). The Court therefore construes Dawson's failure to intervene claim as "pleading in the alternative" as to Burnett, Lloyd, Gamble, and Exarhakos.

Defendants did not move to dismiss, namely Dawson's excessive force and battery claims against Burnett, Lloyd, Gamble, and Exarhakos.

That leaves the question of whether Plaintiffs should be granted leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  For most of the dismissed claims, leave to amend is not warranted because the defects in Plaintiffs' complaints are substantive, and Plaintiffs do not even attempt to suggest that they possess any additional facts that could cure the defect.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). The Court, however, grants leave to amend (1) Dawson's malicious prosecution and fair trial claims as they relate to the charges of reckless endangerment, reckless driving, and aggravated unlicensed operation of a motor vehicle and (2) Johnson's claims for excessive force, assault, battery, and failure to intervene.  Any amended complaint shall be filed by **November 22, 2023**.[7]

Finally, the initial pretrial conference is hereby RESCHEDULED for **December 13, 2023**, at **9:00 a.m.**  The conference will be held remotely in accordance with the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-

---

[7]  Strangely, Plaintiffs' operative complaints were filed in redline form.  Under Rule 1.B of the Court's Individual Rules and Practices, parties must file any amended pleadings "*with* a redline," not in lieu of a clean copy of the amended filing.  If either Plaintiff files an amended complaint, that complaint should be filed in both clean and redlined form.  If Dawson does not file an amended complaint, she shall file a clean version of her current complaint (with no other changes) by the deadline for filing an amended complaint.  (If Johnson does not file an amended complaint, there is no need for him to do so as all of his claims will have been dismissed.)

furman.  The parties are reminded that, no later than the Thursday before the initial pretrial conference, they are required to submit a joint status letter and proposed Case Management Plan. *See* ECF No. 8.

The Clerk of Court is directed to terminate ECF No. 115, and to terminate the City of Mount Vernon, the Mount Vernon Police Department, and Lieutenant Joseph Hunce as Defendants.

SO ORDERED.

Dated: November 2, 2023
       New York, New York

                                       JESSE M. FURMAN
                                     United States District Judge